## PEOPLE *ex rel.* BENHAM *v.* WILLIAMS.

The act authorizing the county recorder of Yuba county to be paid out of the county treasury, for certain specified services, contains no words which raise the presumption that he was to be allowed a preference over other creditors.

Every appropriation, in the contemplation of law, is to be paid in money.

Though the Legislature can make such disposition of accruing revenue as it deems proper, a construction of a statute which would impair the rights of third parties will always be unwillingly adopted, in the absence of express words to that effect.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

Benham, the relator, having transcribed the records of Yuba county, in conformity with a law passed, authorizing the same, and, providing a way of payment therefor, presented his claim to the supervisors, who audited and allowed the same, and directed the treasurer to pay the amount thereof, in cash. The bill was duly presented to the treasurer, who refused payment, on the ground that the cash on hand must be applied to the outstanding warrants, issued prior to the claim of relator, who thereupon sued out an alternative writ of *mandamus* against the defendant, to show cause why he should not pay relator, and thereby comply with the order of the supervisors.

On the return of the writ, it was shown that the cash on hand was sufficient to pay the claim of the relator, collected from the taxes of 1856, but that warrants, drawn for the years 1854 and 1855, to a much larger amount, were outstanding, which had been registered, and payment refused, for want of funds, a long time previous to the presentment of relator's claim. The Court ordered the peremptory writ to issue, from which judgment defendant appealed.

*Bryan & Wilkins* for Appellant.

A *mandamus* will not lie against a county treasurer, who refuses, without cause, to pay money ordered by a board of supervisors to be paid, (this case,) as he is liable to an action at law, by the party aggrieved. 2 Cowen, 444; 6 Hill, 244; 2 Hill, 45, 46; Monell's Prac., 233, 234; People ex rel. Draper *v.* Noteware, Cal. R., Jan. T., 1857.

The Court, if correct as to the right to issue in the cause, erred in ordering the writ to issue : because there were no moneys in the treasury, except what belonged to the "general fund," and there were outstanding warrants for large amounts of money, and largely more than enough to cover the money in the treasury, which had been regularly presented for payment, and payment had been regularly refused, for want of funds; and which had been duly registered, according to law, a long time prior to the issuance of the order of the board of supervisors in this cause.

This point has been decided over and over again, by this Court, and the following are a portion of the decisions, all going to show that, under our statutes, he who is first in registration of his warrants, has the first right to the moneys in the treasury. Taylor *v.* Brooks, 1855; McCall *v.* Harris, 1856; Laforge *v.* Magee, 1856.

*Stephen J. Field* for Respondent.

The facts of the case are briefly these : In April, 1856, the Legislature passed an act authorizing and requiring the recorder of Yuba county to transcribe certain records of the county

into a new set of books. By the third section of this act, it is provided that the recorder shall receive for his services, "pay out of the county treasury at the rate of twenty cents per folio of one hundred words, and he shall be allowed no further compensation whatever for services under the act." Laws of 1856, p. 140, §§ 1, 3.

For other services as recorder, in recording instruments and for copies, he is allowed by the general fee bill just double the sum allowed by this act, being forty cents a folio. See Fee Bill, Laws of 1855, p. 83.

In pursuance of the requirements of the act of April, 1856, the recorder proceeded and transcribed the records mentioned therein, and presented his bill for his services to the board of supervisors of Yuba county, on the seventh of February, 1857, for allowance, and the same was allowed as a cash bill, and the treasurer was, by order of the said board of that date, directed to pay the sum of one thousand five hundred and seventy-four dollars and sixty-five cents to the relator.

The following facts were admitted : That the funds in the hands of the treasurer of the county at the time the relator demanded payment of his bill, and the issuance of the alternative writ, were funds collected from the taxes of 1856, under the head of general purposes, according to an order of the board of supervisors of that year. That there were outstanding warrants drawn in the years 1854 and 1855 upon the general fund of Yuba county, amounting to several thousand dollars, which have been regularly presented for payment and registered, and payment refused for want of funds. That the funds now in the treasury, collected of taxes levied for general purposes in the year 1856, are sufficient in amount to pay the bill of the relator, but not sufficient to pay the same if the outstanding warrants aforesaid are entitled to priority of payment. And the question before the District Judge in the case was, whether the said outstanding warrants are entitled to priority of payment out of said funds over the bill of the relator.

The first objection urged before the District Judge, that this was not a proper case for a writ of *mandamus*, on the ground that the relator has an adequate and sufficient remedy by an action at law against the treasurer, and upon his official bond, was not well taken. See Prac. Act, §§ 466, 467. See notes to case of Fish v. Weatherwax, 2 Johnson Cases, pp. 217–37, 217–50–51.

The act of April, 1856, evidently intended that the relator should be paid for the required services in cash.

1. The third section says : "For services under this act, the recorder shall receive pay out of the county treasury at the rate of twenty cents per folio of one hundred words; and he shall be

allowed no further compensation whatever for services under this act."

"Pay" out of the treasury, means money out of the treasury. In statutes, payment refers to money, for nothing but money can "pay."

2. The Legislature undoubtedly intended, from the limited compensation allowed, that such compensation should be in cash. Copyists receive twenty and twenty-five cents a folio, the amount allowed by this act, and this amount is just one-half the amount allowed the recorder by the general fee bill for recording or copying papers.

The supervisors of Yuba county took this view also, for they allowed the bill rendered as a cash bill.

Under the Constitution, the Legislature can make such appropriation of the future revenues of the county as in its discretion may seem proper. McDonald v. Griswold, 4 Cal., 352.

By the act concerning the records of Yuba county, passed April 19, 1856, the relator was required to transcribe certain records, and for his services the act provides that he "shall receive pay out of the county treasury."

I think it is clear that the Legislature has appropriated, or directed the county treasurer to apply, which is the same thing, so much of the money collected from taxes of the county for the year 1856, and placed in the treasury, as may be necessary for the payment of the services of the relator, which are exacted by its legislation.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

This appeal is prosecuted from an order of the Court below, granting a *mandamus* to compel the treasurer of Yuba county to pay an account allowed by the supervisors in favor of the county recorder.

In 1856, the Legislature passed an act requiring the recorder of Yuba county to transcribe certain records of the county. The third section of the act provides that the recorder shall receive for his services, "pay out of the treasury, at the rate of twenty cents per folio of one hundred words, and he shall be allowed no further compensation whatever, for services under the act."

The principal question involved is, whether outstanding warrants, drawn on the treasury in 1854 and 1855, are entitled to preference, or priority of payment, out of the revenues of 1856, over the account of the relator. The counsel for the relator contends, that inasmuch as the compensation allowed by the act for this special service, is not more than one-half of that which is allowed by law for similar services, the inference naturally arises that the Legislature intended the amount should be paid

[1]n cash, and that the act amounts to a special appropriation, which takes precedence of all other demands upon the treasury.

It has been repeatedly decided by this Court, that the Legislature may make such disposition of county revenues as it may deem proper. While we have acknowledged the power, we have at the same time expressed our unwillingness to give such a construction to legislative acts as would serve to impair the rights of third parties, unless express words were employed which irresistibly warranted the conclusion.

In the present case, there are no words in the act which tend to raise the presumption that the Legislature designed to postpone the other creditors of the county until the account of the relator was paid. Every appropriation is, in contemplation of law, to be paid in money, and the only inference to be drawn from the fact, that the Legislature specified as a compensation a sum less than what was usually allowed for such services, is, that they supposed the amount would be a sufficient compensation for the particular service required.

Judgment reversed.